Good morning, Your Honors. My name is Molly Brooks, and I am a law student at the University of California, Irvine School of Law, appearing on behalf of Jose Luis Buenrostro with my partner, Ms. Nikki Alami, and our supervisor, Stuart Miller. I will be discussing the Bivens issue, and Ms. Alami will be discussing the Joinder issue. We would like to please reserve three minutes for rebuttal. The District Court dismissed Buenrostro's case in light of the Supreme Court's decision in Abbasi. It found that Buenrostro had alternative remedies, and that Congress's actions did not support the creation of a new Bivens claim. However, the District Court erred on both counts. The Supreme Court in Abbasi emphasized the central importance of distinguishing ordinary challenges to, quote, standard law enforcement operations and individual instances of law enforcement overreach, like we have in Buenrostro's case. The issue here is whether a Bivens remedy is available for the rare prisoner who has suffered a sustained course of abuse triggered by his attempt to remedy the abuse through the administrative grievance system to which he is entitled. Why do you think that's a rare case? If we open the door to Bivens claims here, every time a prisoner was subjected to internal punishment, they would claim that it was, oh, retaliation for this, that, or the other thing. Is there any reason to think that this would be a rare case? Definitely, Your Honor. It's a narrow set of facts that by what our client has pleaded in his complaint, there are instances where he is told by the officers that his punishment is as a result of his using the administrative grievance system. So you want to create a Bivens claim that is limited to situations where the evidence says that he was told that it was retaliation? That would be a very odd creation. Definitely. But we're arguing that the definition of the case is where the administrative grievance system is the problem. Here, there was no other recourse for Buenrostro in his attempts to remedy the abuse. He sought to file a grievance as he is entitled. He tried to follow the proper channels, but instead was just subjected to a vicious cycle of abuse every time he would try to remedy the abuse, that that in turn triggered additional abuse. It's a rare set of facts. It doesn't happen often in the Ninth Circuit. Our briefs have some statistics on there that these first-amendment retaliation cases don't come very often. And even if it is the case that officers intentionally abused the administrative grievance system in the same manner as in Buenrostro's case, then Bivens should be available for those clients because there is no... And why do you think your client didn't have an alternative remedy? There's the Bureau of Prisons grievance procedures. There's the habeas corpus. There's injunctive relief. Why do you say he didn't have an alternative remedy? So to respond to each of those, Your Honor, our client does not have the administrative grievance system because, like I stated, that's the problem. Every time that he tries to pursue the grievance system, that is what triggers the abuse that he is suffering. And this Court has held that when a remedy is effectively unavailable, it's the... Well, are they unavailable or that he's just unsuccessful in getting relief? It seems that Buenrostro needs only to have an avenue to pursue and not that his remedial options must be completely or potentially successful options. Why doesn't that matter? He doesn't have any option in the administrative grievance system. He has tried to go up the chain twice in each level of the appeals. He filed a lawsuit before he got to the prison where the retaliation occurred. He's tried different avenues. And injunctive relief is also unavailable here because the prison officials argue two very contradictory things. First, that courts should not be in the business of running prisons, with which we all agree. And second, that because Buenrostro has a purported injunctive remedy, he does not have... He should not have damages here. But that's contradictory because if the court were to grant an injunction here, it would require the court to develop a policy, monitor it on an ongoing basis, have their hands in the prison operations all the time. And what's your best case for that? So we have a case in the Central District of California. It's called Jarrah. And in Jarrah, we had submitted it as a response to the supplemental letter filed by opposing counsel. But in Jarrah, the plaintiff was granted a Bivens remedy because he too was suffering as a result of the administrative grievance process where the officials were retaliating against him for filing petitions of grievances. And then the court found that he did not have injunctive remedy there. And we are similar to that case in that injunctive remedy is inappropriate here. Our client is not even in the same prison. And it would be a contradictory avenue to combat the purported... It just wouldn't make sense here. Damages are one finite circumstance where we would just determine what Gwen Rostro is owed and pursue it in a way of paying him for what he has suffered. It wouldn't make sense to do an injunction here. And Congress has passed legislation in this, you know, area of prison litigation. Doesn't this fact that Congress has spoken in this context counsel against the court extending Bivens? No. The PLRA has, was Congress's attempt to curb prisoner suits by just limiting the number of frivolous lawsuits a prisoner could bring. They affirmatively, by affirmatively controlling prisoner suits in that method, it preserved the availability of Bivens. Bivens was available before the PLRA was enacted, so Congress did have the opportunity to eliminate or narrow Bivens remedies. And effectively, it preserved a prisoner's opportunity to collect Bivens damages in an appropriate case. The Supreme Court in Jones v. Bok explicitly stated, quote, what this country needs, Congress decided, is fewer and better prisoner suits. And a valid claim of retaliation under the First Amendment at this low level is a better valid claim. And this is exactly what Congress preserved the opportunity to collect Bivens damages for. So in our case, there is no other meaningful remedy. Congress has spoken as to preserving the availability of Bivens. So granting Buen Rostro a Bivens remedy would be appropriate here. Thank you. Thank you, Counsel. Good morning, Your Honors. Nikki Elami from Jose Luis Buen Rostro. The District Court dismissed all but one of President Buen Rostro's claims improperly based on joinder. Given the liberal standards governing permissive joinder, all of the prison officials may be joined in this case because Buen Rostro's allegations satisfy both prongs of Rule 20A2, the joinder rule. The first prong requires the same series of transactions or occurrences. Here, by referencing the defendant's shared retaliatory purpose, Buen Rostro alleges the interwoven nature of the defendant's conduct, thus meeting the requirements of the first prong. For example, the head of the Education Department told Buen Rostro that, quote, Fajardo directed her to preclude him from using the typewriter, end quote, because of a grievance and lawsuit that Buen Rostro had filed. Similarly, another correctional officer told Buen Rostro he was, quote, being targeted for filing grievances against high-level staff. And finally, Lieutenant Gregory confirmed to Buen Rostro personally that his treatment was, quote, part of the reprisals for filing grievances. Next, as to the second prong of Rule 20A2, or the common question of law or fact, that, in this particular case, is whether the conduct at hand qualifies as First Amendment retaliation. And that inquiry revolves around the standard articulated by this Court in Rhodes v. Robinson. We will reserve the rest of our time for rebuttal if the Court has no further questions. Thank you. May it please the Court, Edward Himmelfarb with the Department of Justice. You know, I always wondered how that phraseology of may it please the Court first developed. The answer should be it remains to be seen. We hope it pleases the Court. The central focus of the Abbasi decision is on the separation of powers. What Abbasi says is that the question is who should decide whether to provide for a damages remedy, and the answer most often will be Congress. As this Court recently noted, Abbasi severely restricted the availability of Bivens actions for new claims and contexts. And so this unequivocally places the burden on the plaintiffs to justify extending Bivens to new contexts. Now, I would like to refer the Court to the two opinions this Court issued in the Vega case, which we cite in our brief. One is published and one is unpublished. In Vega, which I think may be the only post-Abbasi prisoner case out of this circuit, the court held that the prisoner could not have a First Amendment Bivens claim arising out of access to the courts. He could not have a Fifth Amendment due process claim, Bivens claim, and that the grievance process of the Bureau of Prisons was an adequate alternative remedy. That's a holding of the court. I think that applies here. Now, the court in that case did not reach the issue that's posed here, which is whether a prisoner can file a Bivens claim for First Amendment retaliation, because in that case the prisoner did not adequately plead it. But it's really only a short step to get there. And, in fact, you can make the argument that there are better reasons to prevent prisoners from bringing First Amendment retaliation claims than there are to prevent them from bringing First Amendment access to court claims, because the way things work in prison is prison is a lousy life. You go there. You have no privacy whatsoever. The officials are constantly telling you where you have to be, what you have to do. They're searching you. They're treating you. Nobody in real life would want to be treated that way. And you have a grievance system. So prisoners file grievances. And after that, basically everything is in retaliation for the filing of the grievance. And that's a problem. And if you allow a Bivens remedy to be extended to retaliation claims, you're going to have everything that happens in prison is going to be in retaliation for the grievance that they filed a couple of weeks earlier. But Petitioner is arguing that the alternative remedial structures here don't really work for him. And it seems like his claims arise out of an attempt to pursue administrative remedies, and he is not seeking habeas relief. An injunctive relief is no use, according to their argument, because he was transferred. So does he – I guess I just wanted to ask you, does he really have any alternative remedial options? He did. He exercised those. They were part of the grievance process. During his time in federal prisons, he's filed, according to the papers filed below, as of the date of the summary judgment motion the government made below, he had filed 178 grievances in prison. Not all of those were – But he's claiming he's being punished for that. Well, that's what his claim is. But he took – take the first claim for relief here, the blocking of the phone numbers and the typewriter and the search of a cell and the strip search, which he did not exhaust. The first two he exhausted. He took them – remember, the grievance process is not just at the institution level. It's not the first thing you have to do is you try to resolve it informally. The second thing is you go to the warden. The third thing is you go to the regional director, who has nothing to do with the – I mean, his supervisory over the institution, but he's not at the institution. And the fourth thing, the final thing you have to do just in order to exhaust before you can bring a lawsuit is you go to the central office. He did that with both of those two claims. So he exercised this. Now, the fact that he was not successful in it doesn't mean that those were not adequate remedies. As the Vega decision says, the fact that your alternative remedy is not successful may just mean you don't have a very good case. Now, I'm paraphrasing that, but it does say that in the decision. You might just not have a very good case, and I think that's what happened here. So he did exercise his right to use the grievance process. And what about this – is it a Hera case or Jenna case? I can't remember that they are referring to out of central district. Well, that's a district court case, and honestly, I don't have the facts of that case in mind right now. I'm sorry. Do you want to say something about the Joinder issue? Sure. The Joinder issue is just – it's reviewed for abuse of discretion. You know, when this court is presented with Joinder arguments like that, basically you're going to – unless the district court did something really seriously wrong, you're going to defer to them because it's an abuse of discretion standard. The court is trying to control its docket. In this case, the magistrate judge dealt with three earlier complaints from Dwayne Rostrow and told him each time you can't lump together a bunch of unrelated claims, and each time he would come back with more claims. So he was given several opportunities. It was explained to him what was wrong with his complaints, and he did not fix the complaints. So I think it seems fairly clearly within the district court's discretion to prevent him from joining these unrelated claims and to allow him to go forward with the first claim for relief, but that one being barred on Durabasi. And if the court has no further questions, I – It appears not. Thank you, counsel. Thank you. I think there's eight minutes remaining for rebuttal. Five. Five. Okay. Thank you. Your Honors, I'd like to address three points made by opposing counsel. First and foremost, there is no issue of floodgates and widespread litigation in this case. As discussed in our briefing, First Amendment Bivens cases comprise a very small subset of prisoner cases. They are very few and far between. And more importantly, the reasoning provided by this Court in Lanuza is perfectly applicable. And I'll quote. I'll quote. Recognizing a Bivens action here will produce widespread litigation only if ICE attorneys routinely submit false evidence which no party argues is the case. And if this problem is indeed widespread, it demonstrates a dire need for deterrence validating Bivens' purpose. The same is true here. Recognizing a Bivens – I'm sorry. Where were – what were you quoting from there? An explicate named Lanuza v. Love on page 1033. And the assertion is that prisoners' claims do not commonly include false assertions? It's the assertion that – I don't know what planet that author is living on. So what this case was saying is that we will only have widespread litigation if federal officers are continuously committing constitutional violations. And if that is the case, that is exactly what Bivens is designed to deter. And so we need it more than ever if that is what's happening all the time. And the same applies here because we will only have widespread litigation if there are prisoners who are suffering a sustained course of abuse triggered by their attempts to remedy the abuse through the administrative grievance process. If this is really the case, Bivens is not only appropriate, it is necessary. And we need it here. Second, the administrative grievance process itself in no way qualifies as a remedy. Something can hardly qualify as a remedy when there are further constitutional violations that occur as a result of it. Here, his use of the grievance process triggered further more retaliatory measures infringing on his First Amendment rights. This court has held multiple times that an inmate is required only to exhaust available remedies. And when officials have thwarted the inmate's ability from taking advantage of the grievance process, that remedy is effectively unavailable. And that is precisely what happened here. We have a malfunction of the prison grievance process where every time Buenrostro used the process and went through the proper channels and his claims went higher up, which he did. He went through all the channels. He was punished more as a result of it. Third, first and foremost, yes, we do have an abuse of discretion standard here. But the legal conclusions underlying that decision may be reviewed de novo. And this is for Joinder. So the legal conclusion here is the decision on Joinder, that these officials were improperly joined, held by this court. And that standard comes from this court, too. But moreover, this case can easily be resolved on summary judgment. Everything that Buenrostro claims happened will have a record of it. If there was a hearing on the torn mattress, there's a record of it. If he filed a grievance, there's a record of it. If he really was put into solitary confinement for however long of time and the reasonings for that, there's going to be a record of it. Simply through document production, the only remaining question before the court will be a calculation of the damages. And that will be all that has to be done. It's not likely that there would be a brutal trial. Your Honors, ultimately this is the exact type of case that Abbasi reserved Bivens relief for. The purpose of Bivens is to deter constitutional violations and to ensure that this sustained type of abuse from federal officials not following federal law does not become routine. We urge the court to reverse the district court's dismissal of Buenrostro's complaint and provide him with Bivens relief for these serious constitutional infringements. With that, you're ready to submit. Thank you. Thank you. Thank you once again to the Irvine School of Law. The case just argued is submitted for decision by the court that completes our calendar for the morning. We are on recess until 930 a.m. tomorrow morning. All right. This court for this session stands adjourned.
judges: Rawlinson, Murguia, Rakoff